UNITED STATES DISTRICT COURT

DISTRICT OF OREGON

EUGENE DIVISION

JANELL HIBBS,                                                    Case No. 6:22-cv-00532-MK
                                                                           **OPINION AND**
                                    Plaintiff,                                **ORDER**

        vs.

STATE FARM FIRE AND CASUALTY
COMPANY,
                                    Defendant.

**KASUBHAI,** United States Magistrate Judge:

        Plaintiff Janell Hibbs brings this action alleging claims arising from an insurance policy

dispute. Compl., ECF No. 1. Defendant State Farm Fire and Casualty Company moves to strike

several pleadings as inadmissible settlement communications under Fed. R. Civ. P. 408. For the

reasons that follow, Defendant's motion to strike is DENIED.

## BACKGROUND

        Plaintiff is the owner of real property in Blue River, Oregon. Compl. ¶ 5, ECF No. 1.

Plaintiff bought the property in 2019. *Id.* at ¶ 6. Plaintiff insured the property with a policy from

State Farm. *Id.* at ¶ 7. When Plaintiff obtained that insurance, State Farm entered information about the size, condition, and composition of Plaintiff's dwelling into State Farm's "Estimated Replacement Cost tool" to generate replacement cost limits for the policy at $334,000. *Id.* at ¶¶ 8, 10. State Farm failed to accurately enter the size, condition, and composition of the dwelling into the Estimated Replacement Cost tool. *Id.* at ¶ 9.

Between March 2019 and March 2020, Plaintiff performed renovations to the property, increasing the value. *Id.* at ¶ 14. At the end of the renovation, Plaintiff requested an increase in limits to reflect improvements to the property. *Id.* at ¶ 15. Again, State Farm used the Estimated Replacement Cost tool, and again, Defendant failed to accurately enter the size, condition, and composition of the dwelling. *Id.* at ¶¶ 16–17. State Farm increased Plaintiff's policy limits from $334,000 to $369,000. *Id.* at ¶ 18. State Farm represented to Plaintiff that the limit would be sufficient to replace her home if the house was damaged. *Id.* at ¶ 19.

In September 2020, the property was destroyed during the "Holiday Farm Fire." *Id.* at ¶ 25. Plaintiff made a claim for the fire damage to State Farm and, relying on the inaccurate information, totaled the loss at an amount insufficient to cover the actual total loss. *Id.* at ¶¶ 26–28.

Due to the insufficient limits, Plaintiff filed a complaint with the Oregon Department of Consumer and Business Services. *Id.* at ¶ 28. In December, State Farm represented to the insurance commissioner that, State Farm had "started an investigation to determine if [it is] obligated to extend any benefits beyond the policy terms and conditions in force on the day of loss." *Id.* at ¶ 30. The insurance commissioner issued a finding stating that,

> State Farm explain[ed that] they are still investigating whether or not they owe [an] increase [in] the coverage amount on your home[.] . . .  Your agent explains that they calculated the replacement cost of your home based on the information you

provided . . . based on the available information, I am unable to find a violation of
the Oregon Insurance Code.

*Id.* at ¶ 31.

State Farm sent Plaintiff an agreement to initiate confidential settlement discussions
because a "disagreement exists regarding the nature and extent of the loss and the insurance
coverage." *Id.* at ¶ 32. State Farm then placed Plaintiff's claim on inactive status until Plaintiff's
contractor produced an estimate for the loss. *Id.* at ¶ 33. Plaintiff submitted an estimate totaling
$750,661 and agreed to engage in confidential settlement discussions. *Id.* at ¶¶ 34–35. State
Farm estimated the replacement cost of the property at $479,011.

The parties initiated settlement discussions. State Farm offered an additional $125,000 as
a part of negotiations and noted that Plaintiff could counteroffer. *Id.* at ¶ 39–40. Plaintiff
counteroffered. *Id.* at ¶ 41. State Farm rejected that offer. *Id.* at ¶ 41. State Farm admitted, after
conducting its investigation, that it made an error in setting limits on Plaintiff's policy. *Id.* at ¶
43. Discussions continued until State Farm declined to resume the discussions further. *Id.* at ¶¶
44–46. Plaintiff filed this claim.

In the Complaint, Plaintiff alleges facts concerning negotiations between Plaintiff and
State Farm and the amount offered in those settlement negotiations. Defendant contends that
those sections of the Complaint are inadmissible settlement communication under Fed. R. Evid.
408. Def.'s Mot., ECF No. 6.

## STANDARD OF REVIEW

A court may strike from a pleading "any redundant, immaterial, impertinent, or
scandalous matter." Fed. R. Civ. P. 12(f). The purpose of Rule 12(f) is to help "avoid the
expenditure of time and money that must arise from litigating spurious issues by dispensing with
those issues prior to trial." *Whittlestone, Inc. v. Handi-Craft Co.*, 618 F.3d 970, 973 (9th Cir.

2010) (quoting *Fantasy, Inc. v. Fogerty*, 984 F.2d 1524, 1527 (9th Cir. 1993), *rev'd on other grounds*, 510 U.S. 517 (1994)). However, motions to strike are generally disfavored and infrequently granted. *Legal Aid Servs. of Or. v. Legal Servs. Corp.*, 561 F. Supp. 2d 1187, 1189 (D. Or. 2008); *see also Capella Photonics, Inc. v. Cisco Sys., Inc.*, 77 F. Supp. 3d 850, 858 (N.D. Cal. 2014) ("Motions to strike are regarded with disfavor because of the limited importance of pleadings in federal practice and because they are often used solely to delay proceedings." (quotation marks and alterations omitted)).

Courts may not resolve disputed and substantial factual or legal issues in deciding a motion to strike. *Whittlestone*, 618 F.3d at 973. "A motion to strike should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." *Contreras, ex rel. Contreras v. Cty. of Glenn*, 725 F. Supp. 2d 1157, 1159 (E.D. Cal. 2010) (quoting *Bassett v. Ruggles*, 2009 WL 2982895, at *24 (E.D. Cal. Sept. 14, 2009)).

## DISCUSSION

Plaintiff brings three claims: reformation of a contract based on mutual mistake, breach of good faith and fair dealings, and negligence *per se*. Compl., ECF No. 1. Defendant moves to strike, either in their entirety or in part, paragraph 32, 33, 35, 36, 39, 40, 41, 42, 44, 45, and 46 and subparagraphs 59b, 59c 59d 59e, 59i, 62b, 62c, 62d, 62e and 62i under Rule 408. Def.'s Mot. 2, ECF No. 6. Plaintiff argues that those allegations are permissible because they do not go to the validity or the amount of a disputed claim. Rather, the evidence goes to "another purpose."[1]

---

[1] Plaintiff provides two additional arguments supporting her assertion that those allegations are permissible. Pl.'s Response 5–8, ECF No. 10. The Court concludes that the allegations are permissible because they are alleged for another purpose. The Court does not address Plaintiff's remaining arguments.

Fed. R. Evid. 408 provides, in relevant part:

(a) Prohibited Uses. Evidence of the following is not admissible—on behalf of any party—either to provide or disprove the validity or amount of a disputed claim or to impeach by a prior inconsistent statement or contradiction:
(1) furnishing, promising, or offering—or accepting, promising to accept, or offering to accept—a valuable consideration in compromising or attempting to compromise the claim; and
(2) conduct or a statement made during compromise negotiations about the claim;

* * *

(b) Exceptions. The court may admit this evidence for another purpose, such as proving a witness's bias or prejudice, negating a contention of undue delay, or proving an effort to obstruct a criminal investigation or prosecution.

"A litigant asserting the applicability of Rule 408 must make a 'substantial showing that the communications were part of the attempts to settle the dispute." *Scott v. PacifiCorp*, Civ. No. 1:22-cv-00174-AA 2022 WL 2452281 at *1 (D. Or. July 6, 2022).

The import of Plaintiff's argument is that the allegations are permissible not to prove the "validity . . . of a disputed claim," but rather, as an allegation of Defendant's bad faith. The Ninth Circuit has not addressed whether compromise evidence is admissible to prove bad faith in negotiations. However, in *Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000), the Eighth Circuit addressed that question and concluded that compromise evidence is admissible to prove bad faith.

In *Athey*, the plaintiff alleged, *inter alia*, that the defendant was liable for breach of contract because the defendant had acted in bad faith by failing to investigate the plaintiff's claims and delaying his settlement. *Id.* at 360. As a part of that claim, the court admitted compromise evidence for the purpose of bad faith negotiations. *Id.* at 361.

*Athey*, held that "[a]lthough evidence of conduct during settlement negotiations generally is inadmissible [under Rule 408] to prove a party's liability for the underlying claim," it may be

admitted "when the evidence is offered for another purpose." *Id.* at 362. The court reasoned that within the Eighth Circuit, courts have held that "an insurer's attempt to condition the settlement of a breach of contract claim on the release of a bad faith claim may be used as evidence of bad faith." *Id.* (citing cases). Therefore, the court ruled that evidence of conduct during a settlement conference was not inadmissible under Rule 408, because it was "offered for another purpose." *Id.* (internal quotation marks omitted).

The Second Circuit and courts in the Ninth Circuit have come to the same conclusion as *Athey*. *Clerveaux v. East Ramapo Central School Dist.*, 984 F.3d 213, 243 (2d Cir. 2021) (adopting *Athey*); *Am. Gen. Life Ins. Co. v. James*, 2015 WL 730010, at *6, *16 (N.D. Cal. Feb. 19, 2015) ("The court finds that the settlement communications contained within the challenged portions of the Counterclaim are not offered to prove the validity or amount of a disputed claim, but rather for another purpose, namely, as evidence of [the plaintiff's] course of conduct."); *Milhouse v. Travelers Commer. Ins. Co*., 982 F. Supp. 2d 1088, 1105 n.10 (C.D. Cal. 2013) ("Rule 408, which allows evidence of settlement negotiations to be admitted where offered not to prove liability, but to refute a claim of undue delay or bad faith."); *Cadet Manufacturing v. Am. Ins. Co.*, 2006 WL 8455266 (W.D. Wash. June 28, 2006) ("[C]ourts have found that evidence of prior settlement negotiations may be admitted to show that an insurance company acted in bad faith."). Furthermore, *Athey* was cited with approval in the advisory committee's note to the 2006 amendment. Advisory Committee's Note to the 2006 Amendment (stating that "[t]he intent [of the 2006 Amendment] is to retain the extensive case law finding Rule 408 inapplicable when compromise evidence is offered for a purpose other than to prove the validity, invalidity, or amount of a disputed claim." (Citing *Athey v. Farmers Ins. Exchange*, 234 F.3d 357 (8th Cir. 2000))); *see also Phoenix Solutions Inc. v. Wells Fargo Bank, N.A.*, 254 F.R.D. 568, 584 (N.D.

Cal. 2008) (holding that the intent of the 2006 amendment to Rule 408 was to retain case law finding the rule inapplicable when compromise evidence is offered for another purpose (citing *Athey*, 234 F.3d 357)).

Defendant does not respond with any case contrary to *Athey* or its progeny. Rather, Defendant relies on the plain text of Fed. R. Evid. 408 to argue that Plaintiffs' allegations are inappropriately directed to prove the validity of the disputed claim. Def.'s Reply 5, ECF No. 12. The Court concurs with the well-reasoned court opinions outlined above. The court has discretion in weighing the underlying policy of Rule 408 when deciding whether the admission of the evidence accords with the policy of the rule. *See Josephs v. Pacific Bell,* 443 F.3d 1050, 1064 (9th Cir. 2006); *Fiberglass Insulators, Inc. v. Dupuy,* 856 F.2d 652, 654 (4th Cir.1988) ("The trial court has discretion on the issue of whether to admit such evidence for another purpose under Rule 408.").

The underlying policies of Rule 408 are (1) that "[compromise] evidence is irrelevant as [compromise is] motivated by a desire for peace rather than from a concession of the merits of the claim" and (2) "the public policy favoring the compromise and settlement of disputes." *U.S. v. Contra Costa Cnty. Water Dist.*, 678 F.2d 90, 92 (9th Cir. 1982). Here, however, Plaintiff argues that the allegations are instead intended to "show the underlying course of Defendant's bad faith conduct in the adjustment of [the] loss," to show "Defendant's bad faith and breach of good faith," and to show that Defendant "engaged in a variety of bad faith practices." The Court agrees that the allegations are directed to a legitimate and relevant purpose.

//

//

//

## CONCLUSION

For the reasons above, Defendant's motion to strike (ECF No. 47) is DENIED.


DATED this <u>19th</u> day of December 2022.


<u>s/ Mustafa T. Kasubhai</u>
MUSTAFA T. KASUBHAI (He / Him)
United States Magistrate Judge